CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 06, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIAM K. MAY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:23-cv-00053 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JAMES WRIGHT, | ) | By:  Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Plaintiff William K. May, Jr. ("Plaintiff"), proceeding *pro se*, brings this civil action under

42 U.S.C. § 1983. Plaintiff alleges that, on October 18, 2022, during his transport from an

emergency room to the New River Valley Regional Jail, Defendant Corrections Officer James

Wright ("Defendant") used excessive force against him by throwing him to the floor,

repeatedly dumping him from a wheelchair, and tossing him into a transport van. (*See* Am.

Compl. [ECF No. 48].) This matter is before the court on Defendant's motion to dismiss. (*See*

Def.'s Mot. to Dismiss [ECF No. 49].) The parties fully briefed the motion, and it is ripe for

disposition. For the reasons discussed below, the court will deny Defendant's motion to

dismiss.

**I.**

Plaintiff's claim arises from his October 18, 2022 transport from an emergency room

at Wythe County Community Hospital in Wytheville, Virginia, to the New River Valley

Regional Jail. (*See* Pl.'s Mtn. Am. ¶ 1, 4 [ECF No. 35].)[1] Plaintiff alleges that, because he was

---

[1] Although Plaintiff's original complaint contained additional factual allegations, the court does not consider

not "able to move fast enough," Defendant "grabbed" him by his handcuffs and leg shackles to "sling him in a [wheel]chair" but missed the chair and threw him to the floor. (Am. Compl. ¶ 2.) Plaintiff further contends that the wheelchair he was riding in when he was moved from the hospital room to the transport van did not have a footrest and that his boots were too heavy for him to hold his feet up. (*Id.* ¶ 3.) As a result, his boots got caught under the wheelchair, causing him to "flip" onto the floor, face-first, three or four times. (*Id.*)Further, Plaintiff claims that Defendant and a fireman—who assisted Defendant in transporting Plaintiff to the van—threw him into the van and only partially closed the door, leaving his feet dangling outside. (*Id.* ¶ 4.) After departing the hospital, Defendant allegedly pulled the vehicle over to get Plaintiff's feet inside and properly close the van door. (*Id.*)

Plaintiff asserts that Defendant continued "mistreating" him upon his arrival at the jail, although he does not specify how he was further mistreated. (*Id.* ¶ 5.) He claims that video footage and witnesses can support his claims of "cruel and unjust behavior and unnecessary physical abuse" against Defendant. (*Id.* ¶ 6.) In his operative complaint,[2] Plaintiff does not allege that he was injured by Defendant's alleged actions. (*See generally id.*)

---

those alleged facts here because "an amended pleading supersedes the original pleading, rendering the original pleading of no effect." *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001), *abrogated on other grounds as recognized by Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023). Nor does the court consider any factual allegations found in Plaintiff's other filings, including his brief in opposition to the motion for summary judgment. (*See, e.g.*, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. [ECF No. 35].); *see Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) ("Courts are limited to considering the sufficiency of the allegations set forth in the complaint and the documents attached or incorporated into the complaint." (citations and internal quotation marks omitted)).

[2] Although, as noted above, the court cannot consider allegations outside of his operative pleading, the court would be remiss if it did not acknowledge that, in his original complaint, Plaintiff alleged that he injured his back when Defendant "slammed" him into a wheelchair, and that being "dragged" down the hallway "further cause[ed] debilitating injury to [his] back." (Compl. ¶ E.2 [ECF No. 1].)

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *See, e.g.*, *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 566 U.S. at 678.

To allow for development of a potentially meritorious claim, federal courts are obliged to construe *pro se* pleadings liberally. *See, e.g.*, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Further, "liberal construction of pleadings is particularly appropriate where . . . there is a *pro se*

complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978)(emphasis added); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.

Liberally construing Plaintiff's amended complaint, as the court is required to do for *pro se* litigants, the court infers that Plaintiff asserts a claim of excessive force under 42 U.S.C. § 1983. Section 1983 authorizes a citizen to bring a civil action for deprivation of their "rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988).

The legal standard for an excessive-force claim is informed by whether, on the date of the alleged offense, Plaintiff was serving an active sentence or in custody as a pretrial detainee. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986); *Bell v. Wolfish*, 441 U.S. 520, 535–38 (1979). If Plaintiff was convicted and sentenced at the time of the alleged use of force, his claim would arise under the Eighth Amendment's prohibition of cruel and unusual punishment. *See Whitley*, 475 U.S. at 327. If he was in pretrial custody at the time of the alleged excessive force, his claim would arise under the Fourteenth Amendment. *See Bell*, 441 U.S. at 535–38; *see also*

*Simmons v. Whitaker*, 106 F.4th 379, 387 (4th Cir. 2024). Because Plaintiff's amended complaint does not specify his status on the date that the alleged excessive force occurred, the court will consider the viability of his claim under both the Eighth and Fourteenth Amendments.

### A. Eighth Amendment Excessive Force Claim

"A prisoner bringing an Eighth Amendment excessive force claim must make two showings—one objective, the other subjective." *Alexander v. Connor*, 105 F.4th 174, 182 (4th Cir. 2024).

The subjective prong is "a demanding standard" that asks whether the officer acted with "a sufficiently culpable state of mind." *Id.* (quoting *Brooks v. Johnson*, 924 F.3d 104, 112, 119 (4th Cir. 2019)). To satisfy the subjective prong, the plaintiff must allege "wantonness in the infliction of pain." *Brooks*, 924 F.3d at 112. Whether a defendant acted with wantonness turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Dean v. Jones*, 984 F.3d 295, 301–02 (4th Cir. 2021).

Not surprisingly, "[d]irect evidence of motive or intent may be hard to come by." *Dean*, 984 F.3d at 302. Thus, the Supreme Court has identified factors from which a defendant's subjective state of mind can be inferred:

> [T]he extent of injury suffered . . . [,] the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.

*Hudson*, 503 U.S. at 7 (cleaned up); *see also Brooks*, 924 F.3d at 116. While the severity of any injury factors into whether a defendant used excessive force, the force itself is what "ultimately

counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010); *see also Hudson*, 503 U.S. at 10 (noting that

the "minor" nature of the injuries "provide[d] no basis for dismissal"). Nonetheless, the extent

of injury is relevant in determining "the amount of force applied" and "whether the use of

force could plausibly have been thought necessary." *Wilkins*, 559 U.S. at 37 (quoting *Whitley*,

475 U.S. at 321).

The objective prong measures the gravity of the force employed; it "asks whether the

force applied was sufficiently serious to establish a cause of action." *Id.* (quoting *Brooks*, 924

F.3d at 112). "This is not a high bar." *Wilkins*, 559 U.S. at 38; *see also Brooks*, 924 F.3d at 112.

Generally, only more than *de minimis* or nontrivial use of force is required. *Wilkins*, 559 U.S. at

38. And "when a use of force is malicious or repugnant, a plaintiff need not suffer anything

significant to establish an excessive force claim." *Thompson v. Virginia*, 878 F.3d 89, 101 (4th

Cir. 2017); *see also Hudson*, 503 U.S. at 9–10 ("When prison officials maliciously and sadistically

use force to cause harm, contemporary standards of decency always are violated. This is true

whether . . . significant injury is evident. Otherwise, the Eighth Amendment would permit any

physical punishment . . . inflicting less than some arbitrary quantity of injury." (quoting *Whitley*,

475 U.S. at 327)).

Defendant argues that the amended complaint does not state a valid Eighth

Amendment excessive force claim because it fails both the subjective and objective prongs.

(Def.'s Br. Supp. Mot. to Dismiss ¶ 13 [EFC No. 50].) The amended complaint, he argues,

fails the subjective prong because it contains no allegations about Defendant's mental state.

(*Id.*) For the objective prong, Defendant asserts that Plaintiff merely alleges trivial use of force

because Plaintiff does not allege that he suffered any injuries. (*Id.*) but applying the liberal

standard of construction required at this stage, the court finds that Plaintiff's amended complaint states a claim for excessive force under the Eighth Amendment.

Plaintiff alleges three instances of excessive force. First, Plaintiff alleges that Defendant "grabbed" him by handcuffs and leg shackles to "sling him in a [wheel]chair," but missed the wheelchair and instead threw him to the floor. (Am. Compl. ¶ 2.) Second, Plaintiff alleges that he fell on the floor three or four times because the wheelchair did not have a footrest and his boots got caught underneath the wheelchair. (*Id.* ¶ 3.) Impliedly, Plaintiff alleges—and the court must accept—that after each fall, Defendant placed Plaintiff back in the same wheelchair, without any foot support, and permitted him to fall onto the floor repeatedly. Lastly, Plaintiff claims that Defendant threw him into the transportation van. (*Id.* ¶ 4.)

Starting with the subjective prong, the facts plausibly allege that Defendant acted with "wantonness in the infliction of pain" or applied force "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7; *Brooks*, 924 F.3d at 112. The Fourth Circuit has acknowledged the difficulty of alleging facts pertaining to an officer's subjective motivation. *Dean*, 984 F.3d at 302. Because direct evidence of intent is "hard to come by," *id.*, the court "may 'infer the existence of th[e] subjective state of mind," *Brooks*, 924 F.3d at 116 (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). Plaintiff does not allege that Defendant *deliberately* missed the wheelchair he tried to place him in, caused him to fall out of the wheelchair on the way to the van, or intentionally thew him into the van. (*See* Am Compl. ¶ 2–4.) Plaintiff does, however, allege that Defendant "grabbed" and slung him into the wheelchair because Plaintiff was "not able to move fast enough." (*Id.* ¶ 2.) Further, he alleges that he fell out of the wheelchair not once but three or four times, which is suggestive of deliberate—rather than accidental—infliction

of pain. (*Id.* at ¶ 3.) Construing Plaintiff's amended complaint liberally, and drawing all inferences in his favor, the court can infer that Defendant plausibly applied force with "wantonness in the infliction of pain" *because* Plaintiff was not moving at a satisfactory pace. *Hudson*, 503 U.S. at 7. Plaintiff's allegations are sufficient to allege that Defendant was not acting in a manner, and did not apply force, "in a good-faith effort to maintain or restore discipline." *Id.* at 7.

The amended complaint also contains sufficient facts to support the objective prong of an Eighth Amendment excessive-force claim. Defendant correctly states that the amended complaint does not assert that Plaintiff suffered any injuries as a result of that alleged force. But his lack of injuries is not dispositive. *Wilkins*, 559 U.S. at 37; *see also Hudson*, 503 U.S. at 10. The core judicial inquiry is into the nature of the force alleged, and force that is maliciously applied can violate the Eighth Amendment even if it does not result in serious injury. *Thompson*, 878 F.3d at 101.

Defendant had to apply at least some force to move Plaintiff from the emergency room to the transportation van. *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (noting that safe transportation requires an officer to take at least some action). On Plaintiff's allegations, safe transportation did not require Defendant to grab and sling Plaintiff toward the wheelchair or throw Plaintiff into the van. (Am. Compl. ¶ 2–5.) No facts suggest that Plaintiff was resisting transportation, posing a threat, or engaging in other conduct that would warrant the force alleged. (*See generally id.*) To the contrary, Plaintiff alleges that he was merely "not able to move fast enough." (*Id.* ¶ 2.) Drawing all inferences in Plaintiff's favor, the facts alleged make it plausible that Defendant applied more than *de minimis* force—and force that was unnecessary

under the circumstances—when he grabbed and threw Plaintiff.

Plaintiff also alleges that he fell three or four other times because it was "impossible" for him to hold his boots up and they got caught under the wheelchair on the way to the transportation van. (*Id.* ¶ 3.) Defendant's push of Plaintiff's wheelchair may have been *de minimis* before Plaintiff fell out of the chair for the first time because Defendant had no reason to anticipate that Plaintiff would fall. (*Id.*) The court can safely infer, however, that Defendant had reason to temper his force after the first fall but didn't, resulting in Plaintiff falling face-forward several more times. (*Id.*) This is sufficient for the court to conclude that there is "more than a sheer possibility" that the Defendant used nontrivial force. *Ashcroft*, 566 U.S. at 678.

For these reasons, if Plaintiff was in custody after conviction at the time of the alleged offense, he has stated a valid claim for excessive force in violation of the Eighth Amendment.

## B.  Fourteenth Amendment Excessive Force Claim

Under the Due Process Clause, a pretrial detainee is protected from excessive force that amounts to punishment. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell*, 441 U.S. at 535–39). To prevail on an excessive-force claim, a pretrial detainee's allegations must establish (1) that force was purposely used against him and (2) that the force was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).

First, the plaintiff must allege facts that, if true, would show that the defendant acted deliberately "with respect to his physical acts." *Kingsley*, 576 U.S. at 395. This means that "his state of mind with respect to the bringing about of certain physical consequences in the world" must have been "purposeful, . . . knowing, or possibly . . . reckless." *Id.* at 396. "[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process."

*Id.* at 396 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)) (emphasis in original).

If, for example, "an officer unintentionally trips and falls on a detainee, causing him harm, the

pretrial detainee cannot prevail on an excessive[-]force claim." *Id.* The use of force must be

"deliberate" for the plaintiff's claim to proceed. *Id.*

Second, the plaintiff must show that the force was "objectively unreasonable." *Id.* at

397. In *Kingsley*, "[t]he Supreme Court provided a non-exhaustive list of factors courts must

use to determine objective reasonableness," including:

> [1] the relationship between the need for the use of force and the
> amount of force used; [2] the extent of the plaintiff's injury; [3]
> any effort made by the officer to temper or to limit the amount
> of force; [4] the severity of the security problem at issue; [5] the
> threat reasonably perceived by the officer; and [6] whether the
> plaintiff was actively resisting.

*Simmons v. Whitaker*, 106 F.4th 379, 387 (4th Cir. 2024) (quoting *Kingsley*, 576 U.S. at 397). "A

court must make this determination from the perspective of a reasonable officer on the scene,

including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*,

576 U.S. at 397. Moreover, a court must also account for the government's legitimate interest

in facility management, "appropriately deferring to 'polices and practices that in th[e]

judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain

institutional security.'" *Id.* (quoting *Bell*, 441 U.S. at 540, 547).

Once again, Defendant argues that the limited facts in the amended complaint are

insufficient to state a claim. (Br. Supp. Mot. Dismiss ¶ 17.) He contends that Plaintiff's

amended complaint makes no allegation that Defendant's use of force was unreasonable under

the circumstances. (*Id.*) He also argues that his alleged use of force can, at most, be construed

as negligent acts that are insufficient to state a claim under § 1983. (*Id.* ¶ 19–20.)

Viewing the facts in the light most favorable to Plaintiff, the court concludes that the amended complaint states a valid claim for a Fourteenth Amendment excessive-force violation. First, the facts alleged make it at least plausible that Defendant acted deliberately in "bringing about . . . certain physical consequences in the world." *Kingsley*, 576 U.S. at 395. Plaintiff does not assert that Defendant purposefully or knowingly "missed the chair" while transporting him from the hospital bed, which caused Plaintiff to be "thrown to the floor." (*See* Am. Compl. ¶ 2.) But Plaintiff does allege that the Defendant grabbed him and threw him into the chair *because* he was not "able to move fast enough." (*Id.*) While sparsely detailed, the alleged motivation for the use of force—viewed in the light most favorable to Plaintiff—is sufficient for the court to infer that the Defendant acted purposefully or knowingly when he grabbed and threw Plaintiff. Likewise, the motivation alleged is sufficient for the court to infer that the Defendant also knowingly or purposefully threw Plaintiff into the van. (*Id.* ¶ 4.)

Additionally, Plaintiff alleges that the weight of his boots and lack of a footrest on the wheelchair caused him to fall out of the wheelchair three or four times on the way to the van. (*Id.* ¶ 3.) These causes are distinct from the Defendant's pushing of the wheelchair, but the number of falls allows the court to infer that the Defendant applied force to the wheelchair with a purposeful or knowing state of mind because Plaintiff repeatedly fell out of it. (*Id.*) Thus, Plaintiff has alleged facts that make it plausible that the Defendant deliberately used the force alleged.

Additionally, based on the *Kingsley* factors, Plaintiff has plausibly alleged that the force used was not objectively reasonable. *Kingsley*, 576 U.S. at 397. Starting with the relationship between the need for force and amount of force used, "[g]rabb[ing]" Plaintiff to "sling" him

into a wheelchair and throwing him into the transportation van is not commensurate with the need to transport. (*See* Am. Compl. ¶¶ 2, 4.)  A reasonable (and cool-headed) officer at the hospital would not sling or throw a detainee because they were unable to move quickly. (*Id.*) Likewise, a reasonable officer would not apply force to a wheelchair in a manner that causes a detainee to repeatedly fall face-first out of it. (*See id.* ¶ 4.) The relationship between the need for force and amount of force used is, therefore, sufficient to suggest that Defendant's actions were objectively unreasonable.

As for the extent of Plaintiff's injuries—the second *Kingsley* factor—Plaintiff does not allege any injuries in his amended complaint. This factor weighs against a finding of objective unreasonableness, though it is not dispositive. *Kingsley*, 576 U.S. at 397.

The third *Kingsley* factor—efforts made by the officer to temper or limit the amount of force used—tilts toward a finding of objective unreasonableness with regard to the pushing of the wheelchair. *Id.* Because Plaintiff fell three or four times, the court can infer that the Defendant did not temper or limit his force to prevent Plaintiff from repeatedly falling out of the chair. (*See* Am. Compl. ¶ 4.) As it relates to throwing Plaintiff to the floor, the court can easily conclude that "slinging" or "throwing" an inmate toward a wheelchair is not a "tempered" manner of moving someone from a hospital bed to a wheelchair, regardless of whether Defendant hit or missed his intended mark.

Nothing in Plaintiff's amended complaint suggests that there were any security concerns that required a use of force to control. (*See generally* Am. Compl.) The court does note, however, that transportation from a hospital to a detention center generally poses both security and safety concerns to the detainee, officer, and broader public, such that the

government has a legitimate interest for which it must account. *See Bell*, 441 U.S. at 538–40. Nonetheless, the court cannot say, at least at this early stage, that Defendant's use of force was objectively reasonable in light of these general security and safety concerns.

As for the remaining *Kingsley* factors, the facts alleged do not enable the court to infer that Defendant reasonably perceived a threat or that Plaintiff resisted transportation. (*See generally* Am. Compl.) To the contrary, Plaintiff implies that he was cooperating, but he was not moving "fast enough" for Defendant's liking. (*See id.* ¶ 2.)

For the foregoing reasons, Plaintiff states a valid Fourteenth Amendment claim for excessive force if he was a pretrial detainee at the time of the alleged use of force.

## C. Qualified Immunity

As an alternative ground for dismissal, Defendant asserts that he is immune from suit under the doctrine of qualified immunity. Qualified immunity shields government actors "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine whether Defendant is entitled to qualified immunity, the court considers (1) whether a constitutional violation occurred and (2) whether the right was clearly established at the time of the violation. *Est. of Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020), *as amended* (June 10, 2020). A court has sound discretion to decide which prong of the qualified immunity inquiry to consider first. *Pearson*, 555 U.S. at 242. If the answer to either question is "no," a defendant is immune from suit for the alleged conduct. *Id.* A defendant can present a qualified immunity defense in a Rule 12(b)(6) motion,

but he or she "faces a formidable hurdle" and "is usually not successful" at this early stage of proceedings. *Owens v. Balt. City State's Att'y's Off.*, 767 F.3d 379, 396 (4th Cir. 2014). Defendant asserts that he is entitled to qualified immunity because Plaintiff does not allege a violation of a clearly established constitutional right. (Def.'s Bf. Supp. Mot. to Dismiss ¶ 23.) The court has found, however, that Plaintiff has plausibly alleged § 1983 claims against Defendant. Moreover, Plaintiff's rights to be free from excessive force under the Eighth and Fourteenth Amendment were clearly established at the time of the alleged use of force. *See, e.g.*, *Dean*, 984 F.3d at 310 (citing *Hudson*, 502 U.S. at 7; *Whitley*, 475 U.S. at 320–31) (explaining that inmates' Eighth Amendment "right to be free from pain inflicted maliciously and in order to cause harm" has long been "clearly established"); *Orem*, 523 F.3d at 448 (same with regard to a pretrial detainee's Fourteenth Amendment right to be free from excessive force).

To the extent that there is any lingering question of whether Defendant violated a clearly established constitutional right, that question is premature at this stage. *See Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage."). Accordingly, the court will deny Defendant's motion to dismiss based on qualified immunity without prejudice; he may reassert the defense at a later stage.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 6th day of March 2025.


/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE