CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 27, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIAM K. MAY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00053 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JAMES WRIGHT, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Plaintiff William K. May, Jr., proceeding *pro se*, brings this civil-rights action under 42 U.S.C. § 1983 against Defendant James Wright. Plaintiff claims that, on October 18, 2022, during his transport from an emergency room to the New River Valley Regional Jail, Defendant used excessive force against him. (*See* Am. Compl. [ECF No. 48].) Defendant has moved for summary judgment. (*See* Def.'s Mot. for Summ. J. [ECF No. 58].) The day after Defendant filed his motion, the clerk issued a notice in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF No. 60.) The notice informed Plaintiff that he had 28 days to respond to Defendant's motion and that, if no response was timely filed, the court may decide the matter without further notice. (*Id.* at 2.) Plaintiff did not respond to Defendant's motion and has not filed anything in support of his claims in more than a year. Accordingly, Defendant's motion is ripe for review and, for the following reasons, must be denied.

## I.

### A.  Allegations in Plaintiff's Amended Complaint

Plaintiff's claim arises from events occurring during his October 18, 2022 transport from an emergency room at Wythe County Community Hospital in Wytheville, Virginia, to the New River Valley Regional Jail ("NRVRJ"). (*See* Pl.'s Mot. to Am. ¶¶ 1, 4 [ECF No. 35].) Plaintiff alleges that, because he was not "able to move fast enough," Defendant "grabbed" him by his handcuffs and leg shackles to "sling him in a [wheel]chair," but missed the chair and threw him to the floor. (Am. Compl. ¶ 2.) Plaintiff further alleges that, when he was being taken from the hospital room to the transport van, the wheelchair Defendant used did not have a footrest and his boots were too heavy for him to hold his feet up, so his boots got caught under the wheelchair causing him to "flip" onto the floor, face-first, three or four times. (*Id.* ¶ 3.) Further, Plaintiff claims that Defendant and a fireman—who Defendant allegedly asked to help him transport Plaintiff to the van—threw him into the van and only partially closed the door, leaving his feet outside. (*Id.* ¶ 4.) After leaving the hospital, Defendant allegedly pulled the vehicle over to get Plaintiff's feet inside and properly close the van door. (*Id.*)

Plaintiff alleges that Defendant continued "mistreating" him upon arrival at the jail, although he does not specify how he was mistreated. (*Id.* ¶ 5.) He claims that video footage and witnesses can support his claims of "cruel and unjust behavior and unnecessary physical abuse" against Defendant. (*Id.* ¶ 6.) Plaintiff's amended complaint contains no allegation that he was injured by Defendant's actions.

Plaintiff's amended complaint is not sworn or verified.

## B. Defendant's Summary Judgment Evidence

In support of his motion for summary judgment, Defendant offers evidence that contradicts Plaintiff's version of the facts.

Plaintiff has a lengthy history of health issues related to his spine and back. (Decl. of L. Ferguson ¶ 4 [ECF No. 28-2].) He has also been taken to the hospital on numerous occasions after complaining of chest pain and difficulty breathing. (*Id.* ¶ 5.)

On October 18, 2022, Defendant met Plaintiff around 11:40 a.m. at the Wythe County Sheriff's Department to transport Plaintiff and another inmate to NRVRJ. (Decl. of J. Wright ¶¶ 2–3 [ECF No. 28-1].) To prepare Plaintiff for transport, Defendant asked him a series of questions related to booking. (*Id.* ¶ 4.) After Plaintiff answered the questions, Defendant instructed him to stand up so Defendant could perform a pat down. (*Id.*) Plaintiff complied and required no assistance standing. (*Id.*)

Defendant then tried to place handcuffs on Plaintiff, but, when he did so, Plaintiff told Defendant, "I can't breathe. I'm going to die." (*Id.* ¶ 5.) Defendant asked Plaintiff if he needed medical attention, and Plaintiff responded, "Yes, I need to go to the hospital." (*Id.*) Defendant then asked a Wythe County Sheriff's deputy to have dispatch call EMS. (*Id.*)

EMS arrived at the Sheriff's department, and Defendant watched them check Plaintiff's vital signs. (*Id.* ¶ 6.) EMS told Plaintiff that his blood pressure was high and asked Plaintiff if he thought he needed to go to the hospital. (*Id.*) Plaintiff said that he did. (*Id.*)

Defendant asked EMS if they were comfortable riding alone in the ambulance with Plaintiff while Defendant followed in his NRVRJ transport vehicle, and EMS indicated they were. (*Id.* ¶ 7.) Defendant told EMS that if they had any trouble, they should stop and Defendant would assist them. (*Id.*) Before the ambulance left, Defendant fully restrained Plaintiff. (*Id.*) Defendant then followed the ambulance to the Wythe County Community Hospital in his NRVRJ transportation vehicle. (*Id.*)

After they arrived at the hospital, Plaintiff and Defendant waited in the hallway for a room to become available. (*Id.* ¶ 8.) While in the hallway, Defendant heard Plaintiff being disrespectful toward hospital personnel, complaining that "they were just going to let him suffer and die." (*Id.*) Plaintiff was ultimately admitted to the hospital for reported chest pain and difficulty breathing. (*Id.* ¶ 6.) After they were assigned to a room, a doctor came in and spoke with Plaintiff, drew his blood, and ordered a chest x-ray. (*Id.* ¶ 8.) Plaintiff received breathing treatments and intravenous medication. (*Id.*) He was diagnosed with chronic pulmonary disease and discharged a few hours after arrival. (*Id.* ¶¶ 6–8.)

Upon his discharge, Plaintiff complained that the medication he had received made his legs numb and that he could not move them. (*Id.* ¶ 9.) The doctor told Plaintiff that was not possible, but Plaintiff continued to argue with her. (*Id.*) The doctor then pulled on Plaintiff's feet, watched Plaintiff pull them back, and told Plaintiff that he had sufficient use of his legs. (*Id.*) The doctor clarified that Plaintiff had been admitted to the hospital to treat his breathing issues, which had been resolved. (*Id.* ¶ 10.) Plaintiff's concerns about his legs were not raised until after he was discharged, and the hospital provided no discharge instructions regarding Plaintiff's reported inability to walk. (*Id.*; Decl. of L. Ferguson ¶ 6.)

- 4 -

After the doctor left the room, Defendant asked Plaintiff if he would stand up and walk outside to the NRVRJ transportation vehicle. (Decl. of J. Wright ¶¶ 10–11.) Plaintiff responded that he could not, so Defendant requested a wheelchair for Plaintiff. (*Id.* ¶ 11.) When a nurse arrived with a wheelchair, Plaintiff stated he needed a catheter placed to help him urinate. (*Id.*) The nurse replied that he had not mentioned needing a catheter before he was discharged. (*Id.*) After hearing this, Plaintiff asked Defendant, "Isn't there a medical place I can go?" and told Defendant, "I can't do jail." (*Id.* ¶ 12.) Defendant told Plaintiff he would have to be transported to NRVRJ, but Plaintiff refused to stand up to walk to the transport vehicle. (*Id.*)

Because he refused to walk, Defendant and the nurse transferred Plaintiff from his hospital bed to the wheelchair. (*Id.* ¶ 13.) Plaintiff was placed, not "slammed," into the wheelchair. (*Id.*) Plaintiff did not state or show any signs that he was injured or in pain as a result of the transfer to the chair. (*Id.*)

Defendant then proceeded to push Plaintiff out of the hospital room. (*Id.* ¶ 14.) But Plaintiff slid his foot off the footrest and lowered it to the ground, preventing the wheelchair from moving forward. (*Id.*) Plaintiff then claimed Defendant was purposefully running over his foot. (*Id.*) Despite his complaints, Plaintiff did not state or show any indication that he was injured or in pain as a result of his being pushed in the wheelchair. (*Id.*) Defendant put Plaintiff's foot back on the footrest of the wheelchair and wheeled him to the transportation vehicle outside of the hospital. (*Id.* ¶ 15.)

Once outside, Plaintiff refused to enter the vehicle. (*Id.*) An EMS crewmember observed what was happening and helped Defendant place Plaintiff in the vehicle via the side

door. (*Id.*) Defendant then drove Plaintiff to NRVRJ. (*Id.*)

After arriving at the jail, two correctional officers came to the sally port and helped Defendant escort Plaintiff out of the vehicle. (*Id.* ¶ 16.) At that point, Plaintiff was able to stand up, exit the van, and sit in the wheelchair. (*Id.*) He was then wheeled to booking by another officer, and Defendant had no further interactions with Plaintiff that day. (*Id.*)

Plaintiff did not report any trauma, marks, bruises, bleeding, or movement issues when he was booked. (Decl. of L. Ferguson ¶ 7.) But based on a complaint that his spinal column stimulator was "messed up," he was evaluated by NRVRJ medical staff. (*Id.*) The medical exam did not reveal any bruises, contusions, lacerations, or open areas, and the medical provider noted that Plaintiff could fully move all of his extremities. (*Id.*) The next day, Plaintiff underwent an x-ray related to his spinal issue. (*Id.*) The x-ray revealed no new injuries that would have arisen while Plaintiff was at the hospital the day before. (*Id.*)

### C. Plaintiff's Evidence

The day after Defendant filed his motion for summary judgment, the court sent a *Roseboro* notice to Plaintiff, which "advise[d] Plaintiff[] of his . . . right to respond to and oppose the Motion." (*Roseboro* Notice 1.) The notice specifically stated, "To survive summary judgment once the moving party files the motion and alleges the absence of a genuine issue of material fact, the nonmoving party must establish that there are specific material facts in dispute." The notice further informed Plaintiff that he "must clearly identify which facts are disputed, setting forth his . . . version of the facts with sufficient evidence," which may include "court transcripts and exhibits, discovery materials, electronically stored information, notarized affidavits, declarations signed under penalty of perjury, or other admissible

evidence." (*Id.*) The notice also informed Plaintiff that he could request discovery to oppose the motion for summary judgment under Federal Rule of Civil Procedure 56(d). The *Roseboro* notice told Plaintiff that he had 28 days from the date of the notice to file a response to the motion and cautioned that, if no response was timely filed, "the Court may decide the matter without further notice." (*Id.* at 2.)

Despite the warnings and information contained in the *Roseboro* notice, Plaintiff did not respond in opposition to Defendant's motion for summary judgment.[1] Plaintiff's last filing in this case was his response in opposition to Defendant's motion to dismiss his amended complaint, which was filed on May 29, 2024. (*See* Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss [ECF No. 52].)

Ordinarily, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c); *see Simmons v. Whitaker*, 106 F.4th 379, 384–85 (4th Cir. 2024) ("To survive summary judgment, . . . a nonmovant must show that there is a genuine dispute of material fact" and "must cite to particular parts of materials in the record, including affidavits.") (citations omitted). "If a party

---

[1] Plaintiff was clearly aware of his obligation to respond. In August of 2023, Defendant filed a motion for summary judgment related to Plaintiff's original complaint before Plaintiff sought leave to amend. (*See* ECF No. 27.) Plaintiff received a *Roseboro* notice related to that motion and timely filed a well-written motion for extension of time to respond. (*See* ECF No. 33 (thanking the Clerk and "acknowledging receipt of the notification from the Court, informing [Plaintiff] of the time in which to respond to the defendant's motion" and asking for an enlargement of time to pursue discovery and prepare his response).) Plaintiff also received a *Roseboro* notice concerning Defendant's motion to dismiss his amended complaint and timely, and successfully, opposed that motion. (*See* ECF Nos. 51, 52.)

. . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e). Nevertheless, the Fourth Circuit has endorsed the position—even in years since the adoption of the current versions of Rule 56(c) and (e), cited above—that the court must look at the entire record to determine whether there is any evidence that would create a genuine issue of material fact precluding summary judgment, particularly in cases filed by prisoners proceeding *pro se*. *See, e.g.*, *Gowen v. Winfield*, 130 F.4th 162, 171 (4th Cir. 2025) (holding that, although plaintiff did not address defendants' exhaustion argument or supporting evidence in his opposition brief, the court erred in concluding that plaintiff had forfeited his exhaustion arguments because he had addressed exhaustion in his verified complaint); *Tory v. Davis*, No. 21-6649, 2022 WL 17716775, at *3 (4th Cir. Dec. 15, 2022) (vacating court's grant of summary judgment based on the court's failure to consider affidavit of plaintiff's sister that was not attached to or cited in summary judgment briefing but was attached to plaintiff's response in opposition to motion to dismiss).

The court is also cognizant of the Fourth Circuit's admonishment that, even when a *pro se* plaintiff fails to respond to a particular argument or specifically challenge summary judgment evidence, "[a] verified complaint 'based on personal knowledge' must be treated as 'the equivalent of an opposing affidavit for summary judgment purposes.'" *Gowen*, 130 F.4th at 175 (quoting *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021); *see also id.* at 175–76 ("Affidavits and verified complaints may not be cast aside at summary judgment, 'even

affidavits that are uncorroborated, self-serving, or filed by *pro se* prisoners.'") (quoting *Alexander v. Connor*, 105 F.4th 174, 183 (4th Cir. 2024)). Neither *Gowen*, *Goodman*, nor *Alexander* was decided under the precise circumstances presented here, where the plaintiff neglected to respond to the defendant's motion for summary judgment altogether. *See Gowen*, 130 F.4th at 175 (holding plaintiff did not need to present or cite an additional affidavit concerning administrative exhaustion in his opposition brief to survive summary judgment where he had already made sworn statements about his exhaustion efforts in his verified complaint); *Alexander*, 105 F.4th at 178–79 (holding the district court erred by crediting defendant's evidence over plaintiff's self-serving declaration offering an opposing version of events); *Goodman*, 986 F.3d at 498–99 (vacating district court's award of summary judgment in defendant's favor when the decision did not consider plaintiff's verified original and first amended complaints as summary judgment evidence, despite plaintiff's citation to them and insistence that they created genuine issues of material fact). Still, out of an abundance of caution and with the Fourth Circuit's apparent preference in mind, the court considers the entire case record, not merely the summary judgment record, in determining whether there are any genuine issues of material fact that preclude summary judgment.

Although Plaintiff has not offered any documentary evidence to support his claims, his original complaint—though not his amended complaint—was verified. (*See* Compl. 3 [ECF No. 1].) Accordingly, as long as the allegations therein are based on personal knowledge, the original complaint operates as the equivalent of an affidavit for summary judgment purposes. *Goodman*, 986 F.3d at 498; *see also id.* at 499 ("[A]n amended complaint does not divest an earlier verified complaint of its evidentiary value as an affidavit at the summary judgment stage.").

In Plaintiff's original verified complaint, he asserts that he "was slammed into a wheelchair by Officer Wright even though [Plaintiff] was unable to walk, therefore injuring [his] back." (Compl. 2.) He further asserts he "was dragged down [the] hallway by named Defendant J. Wright though he had knowledge [Plaintiff] was unable to walk, further causing debilitating injury to [his] back." (*Id.*) The court considers these assertions in evaluating Defendant's motion for summary judgment.

## II.

Summary judgment under Federal Rule of Civil Procedure 56 "allows a case to be resolved before and without a trial when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 352 (4th Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The court's role in ruling on such a motion is not to assess the truth of any fact alleged or to weigh facts, as would a jury in finding facts, but only to determine whether facts are disputed *and* whether the disputed facts are material." *Id.* (citations omitted).

In deciding a motion for summary judgment, "the court construes all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate if there are genuine disputes of material fact and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, but is appropriate "when the evidence is so one-sided that one party must prevail as a matter of law." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 959 (4th Cir. 2022) (quoting *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022)).

## III.

Plaintiff's claims against Defendant Wright arise under 42 U.S.C. § 1983. Section 1983 authorizes a citizen to bring a civil action for deprivation of their "rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988).

Plaintiff claims that Defendant violated his constitutional rights by using excessive force against him during the October 18, 2022 transport to NRVRJ. The legal standard for an excessive-force claim is determined by whether, on the date of the alleged offense, the plaintiff was a convicted prisoner or a pretrial detainee. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986); *Bell v. Wolfish*, 441 U.S. 520, 535–38 (1979). If Plaintiff was a convicted prisoner at the time of the alleged excessive force, his claim is governed by the Eighth Amendment's prohibition on cruel and unusual punishment. *See Whitley*, 475 U.S. at 327. If he was a pretrial detainee at the time of the alleged excessive force, his claim is governed by the Fourteenth Amendment's due process guarantee. *See Bell*, 441 U.S. at 535–38; *Simmons*, 106 F.4th at 387.

Because the evidence does not reveal his status on the date of the alleged excessive force, the court considers whether a reasonable jury could find for Plaintiff under either standard.

## A. Eighth Amendment Excessive-Force Claim

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned," including the use of excessive force by prison officials. *Tedder v. Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013); *Iko v. Shreve*, 525 F.3d 225, 238 (4th Cir. 2008). "A prisoner bringing an Eighth Amendment excessive force claim must make two showings— one objective, the other subjective." *Alexander v. Connor*, 105 F.4th 174, 182 (4th Cir. 2024). The objective prong measures the gravity of the force employed; it "asks whether the force applied was sufficiently serious to establish a cause of action." *Id.* (quoting *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019)). "This is not a high bar, requiring only something more than '*de minimis*' force." *Brooks*, 924 F.3d at 112; *see also Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021) ("[T]rivial force is not enough, but anything more will suffice."). But "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

The subjective prong, on the other hand, presents "a demanding standard" that asks whether the officer acted with "a sufficiently culpable state of mind." *Alexander*, 105 F.4th at 182 (quoting *Brooks*, 924 F.3d at 112, 119. "[W]antonness in the infliction of pain" is required to satisfy the subjective prong. *Brooks*, 924 F.3d at 112. Whether a defendant acted with wantonness turns on "whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7; *see also Brooks*, 924 F.3d at 113 ("[C]orrections officers cross the line into impermissible motive . . . when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination.").

Because "[d]irect evidence of motive or intent may be hard to come by," *Dean*, 984 F.3d at 302, the Supreme Court has identified factors from which a defendant's subjective state of mind can be inferred:

> [T]he extent of injury suffered . . . [,] the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.

*Hudson*, 503 U.S. at 7 (cleaned up); *Brooks*, 924 F.3d at 116. While the severity of any resulting injury factors into whether a defendant used excessive force, the force itself is what "ultimately counts." *Wilkins*, 559 U.S. at 38; *see also Hudson*, 503 U.S. at 10 (noting that the "minor" nature of the injuries "provide[d] no basis for dismissal"). Still, the extent of injury is relevant in determining "the amount of force applied" and "whether the use of force could plausibly have been thought necessary." *Wilkins*, 559 U.S. at 37 (quoting *Whitley*, 475 U.S. at 321).

In this case, Defendant's summary judgment evidence, if uncontroverted or believed, would show that he did not use excessive force against Plaintiff in violation of the Eighth Amendment. Based on Defendant's version of events, Defendant's use of force would appear no more than "trivial." His evidence reveals only the following physical interactions with Plaintiff on October 18, 2022: Defendant's pat down search of Plaintiff at the Wythe County Sheriff's Department, his transferring Plaintiff from his hospital bed to a wheelchair with the

assistance of a nurse, his pushing the wheelchair from the hospital room to the transport vehicle, his placing Plaintiff's foot back on the footrest of the wheelchair after it slid off, and his lifting Plaintiff into the vehicle with help from EMS. Such evidence suggests that Defendant's interactions with Plaintiff were nothing more than *de minimis*, ordinary touches to ensure Plaintiff's safe transport to NRVRJ.

But Plaintiff's limited evidence presents an opposing version of what transpired—a so-called "genuine dispute" of "material fact." Fed. R. Civ. P. 56. He assets that Defendant "slammed" him into the wheelchair and "dragged" him down the hallway. (Compl. 2.) A jury adopting Plaintiff's version of events could conclude that "slamming" and "dragging" Plaintiff while his mobility was impaired constituted nontrivial force that is sufficient to satisfy the objective prong of Plaintiff's Eighth Amendment claim. *Cf. Hendrickson v. Cooper*, 589 F.3d 887, 890–91 (7th Cir. 2009) (holding that officer's "slamm[ing] [plaintiff] onto the concrete floor" and "press[ing] his knees into [plaintiff's] back while another officer cuffed [plaintiff]" was "not the type of de minimis force that cannot, as a matter of law, constitute an Eighth Amendment violation").[2] Because the court may not weigh evidence or make credibility determinations at this stage and must view the evidence in the light most favorable to plaintiff and assume a jury would resolve all genuinely disputed facts in his favor, *see Alexander*, 105 F.4th at 179, the court cannot conclude that Defendant is entitled to judgment as a matter of law on the basis that the force used was only *de minimis*.

---

[2] *But see Tatum v. Shoemaker*, No. 7:10-CV-00296, 2012 WL 899633, at *11 (W.D. Va. Mar. 16, 2012) ("Plaintiff's allegation that Laster and Stiller 'slammed' him into a chair does not describe excessive force. Instead, plaintiff's descriptive language of being 'slammed' into the chair without any consequence presents the use of *de minimis* force.").

With regard to the subjective prong, the parties' evidence is also in conflict. Defendant's evidence belies any suggestion that he acted wantonly with the malicious or sadistic intent to cause Plaintiff harm. It reveals that Plaintiff did not suffer any injury as a result of the force used by Defendant to transport him to NRVRJ, that Defendant needed to employ some degree of force in order to safely move Plaintiff—who refused to walk on his own—from his hospital room to the transport vehicle, and that the amount of force used was no more than was necessary to accomplish his task of moving a recalcitrant Plaintiff.

But again, the assertions in Plaintiff's verified original complaint offer a different perspective. His statements suggest that he suffered "debilitating injury" to his back based on Defendant's handling of him. (Compl. 2.) And a jury drawing all reasonable inferences in Plaintiff's favor could conclude that Defendant used more force than necessary to transport Plaintiff, despite no apparent threat, without any efforts to temper the severity of the force employed. Because a jury could choose to believe Plaintiff's version of events, the court cannot find that, as a matter of law, Defendant's actions did not violate the Eighth Amendment.

### B. Fourteenth Amendment Excessive-Force Claim

Under the Due Process Clause, a pretrial detainee is protected from excessive force that amounts to punishment. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell*, 441 U.S. at 535–39)). To prevail on a Fourteenth Amendment excessive-force claim, a pretrial detainee must show that (1) that force was purposely used against him and (2) that the force was objectively unreasonable. *Simmons*, 106 F.4th at 387 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)).

- 15 -

First, the plaintiff must establish that the defendant acted deliberately "with respect to his physical acts." *Kingsley*, 576 U.S. at 395. This means that "his state of mind with respect to the bringing about of certain physical consequences in the world" must have been "purposeful, . . . knowing, or possibly . . . reckless." *Id.* at 396. "[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 396 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)) (emphasis in original). If, for example, "an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim." *Id.* The use of force must be "deliberate" for the plaintiff's claim to proceed. *Id.*

Second, the plaintiff must show that the force was "objectively unreasonable." *Id.* at 397. To determine whether the force used was reasonable, the court considers, *inter alia*: (i) "the relationship between the need for the use of force and the amount of force used"; (ii) "the extent of the plaintiff's injury"; (iii) "any effort made by the officer to temper or to limit the amount of force"; (iv) "the severity of the security problem at issue"; (v) "the threat reasonably perceived by the officer"; and (vi) "whether the plaintiff was actively resisting." *Id.* The test for reasonableness is not to be applied "mechanically," but rather "requires careful attention to the facts and circumstances of each particular case." *Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464, 467 (2021).

Genuine disputes of material fact prevent summary judgment under the Fourteenth Amendment standard as well. Although Defendant's evidence would show that Defendant's use of force was objectively reasonable, Plaintiff's sworn statements to the contrary could support a jury verdict in his favor. Once again, Plaintiff's statements suggest he was

significantly injured and that Defendant used more force than necessary even though Plaintiff posed no threat or security problem. Because the court must leave the decision of which version of events to credit to the jury, the court will deny summary judgment as to Plaintiff's Fourteenth Amendment excessive force claim as well.

**IV.**

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 58) will be denied.

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 27th day of March, 2026.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE